Good morning, Your Honors. My name is Tony G. Wald and I'm here on behalf of the Estate of Tomas Aguirre. This case obviously focuses on what you can and cannot do with a written power of attorney. And the law in the State of Washington was handed down in 1994 by the case of Bryant v. Bryant, which is a dissolution action, and in that case they described the state of the law essentially based on the fiduciary duties with the use of a power of attorney. And the question was, whether or not the power of attorney must contain specific authorization is answered by the general rules governing powers of attorney. A power of attorney is a written instrument by which one person as principal appoints another as agent and confers on the agent authority to act in the place instead of the principal. Powers of attorney are strictly construed. Accordingly, the instrument will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the expressed provisions. Counsel, are you arguing the same thing that you argued back in 2002? I am arguing, Your Honor, that the law of the case should not be followed in this instance, because the decision of the case should not be followed. Are you arguing essentially the same thing that you argued in 2000? Yes, Your Honor. Counsel, I saw the main issue of the case as not being what a power of attorney authorizes, but what a subsequent panel can do about a previous panel's decision. The previous panel relied heavily on a court of appeals of Washington case, the State of Lennon v. Lennon, which says that a gift can be made with a power of attorney, provided that the attorney in fact bears the heavy burden of proving that a gift occurred by clear, cogent, and convincing evidence. Has the State of Lennon v. Lennon, the 2001 Washington court of appeals case, been overruled or reversed by the Washington Supreme Court? No, it has not, Your Honor. But the dicta from the State of Lennon that was used by the prior panel to make its ruling was clearly erroneous under Washington law. And on the basis that it was clearly erroneous, I suggest that this Court has the discretion. What is the authority that would tell us we ought to do that? You mean to say the first panel was just wrong and we have to overrule it? Well, Your Honor, the way the law fits together, as I see it in Washington, is you have the State of Bryant saying that a power of attorney No, I'm not asking about Washington law. I'm asking about why you get to argue the same thing twice to the same court without any intervening change in law. Well, the authorities cited in my brief gave four different criteria under which this Court had the discretion not to follow the prior decision. And there was a decision by the Washington Supreme Court in August 2002, approximately a month after this panel ruled, called the Olivine case, wherein the Court was looking at the issue of whether or not you had the power to change beneficiary designations. And the Court said the Washington Supreme Court said you didn't have the authority to do that and referred to Bryant v. Bryant as powers of attorney being strictly construed. Are we talking about Olivine now? Yes, sir. I have trouble with using Olivine the way you want, even if we could approach it on a blank slate, because Olivine is about a lessor of property for an incinerator against a pollution liability insurer. There is no transaction between family members who are natural objects of affection or anything like that. The issue of gifts between family members just doesn't even arise. Well, what I would do to it because it doesn't arise. The only reason I make reference to Olivine is it is the Washington Supreme Court. There was a decision after this, the prior panel's decision, Jackson National Life. That's an unpublished opinion, right? Yes, that is. Well, you're saying that instead of following the published opinion of the Washington Court of Appeals, the panel should have followed or we should overturn the panel because of an unpublished opinion of the Washington Court of Appeals? Your Honor, as I see this, the function of this Court is to determine what they believe the Washington Court would do under Washington law. And guidance as to Washington law can only come from Washington decisions. What is the doctrine in Washington on unpublished opinions? I know they're non-presidential in our court. Rules of the Washington Court of Appeals may limit citation to unpublished opinions. Please refer to the Washington rules of court. And what do Washington rules of court say about them? Say that were this a Washington appellate court argument, I would not be permitted to refer to the Washington. Why should we follow it if they won't? Well, Your Honor, the estate of Lennon case involved dicta in a non-controlling circumstance. This case involves holding in a decision by an appellate court in this State. And estate of Lennon involved a circumstance where it involved gifts of three checks. I'm sorry, Your Honor. Am I interrupting you? No, go ahead. Involved that there was a power of attorney that didn't authorize gifts. There were three checks given to natural objects, a bounty later. And the question was there was dicta to the effect that had there been evidence of specific authorization, unless there was, these gifts would be improper. But they didn't address the issue because the dead man statute in that case didn't allow access to that information. So it was non-controlling dicta. And in that case, in contrast to this case, in this case what Mrs. Karuga testified was that when Tomas Aguirre handed her the power of attorney, Tomas Aguirre said, I'm giving you this to facilitate my gifts to you of this, my property. The statute says the attorney in fact or agent shall not have a power unless specifically provided otherwise in the document to make any gifts of property by the principal. Okay, counsel. But can I ask you once more? Under Federal law, under the law of this Court, what is it, what is the closest authority that says that we should reconsider now, because we got it wrong in the first place, the law of the case that is now a jury has, the district court, the court below has followed, the jury has rendered a verdict. What is the Federal authority that says that we can say, oh, forget it all, we were wrong, we're going to correct that? I'm sorry, Your Honor. Are you asking me for the closest Washington authority? No, I'm asking for Federal authority on law of the case that says that this is the kind of exceptional circumstance that says that we should disagree with the prior panel. Well, Your Honor, I'm sorry, I can't point you to anything other than the concept that if a decision is clearly erroneous under State law, in a diversity case, you're required to follow State law, and this case. But we could just keep. Okay. I have trouble, I guess, because of the adverb, clearly. Pardon me, sir? I can see some sense to your argument that the panel decision is erroneous because of that phrase in the statute that the power to make a gift has to be in the document. But I have trouble, even if I think it may have been erroneous, I sure have a lot of trouble saying it's clearly erroneous where the State of Lennon, which actually it looks to me like a pretty fair prediction of what the Supreme Court would rule. It looks like a safe enough decision. I mean, it could be wrong, but it looks like a ballpark. And I have trouble saying it's clearly erroneous to follow the most closely in point decision of the State of Washington. With all due respect, Your Honor, that decision or to the extent that that dictum is way out of line with the public policy behind this statute and the obligations of a fiduciary to their principal, what that decision, if it's followed, and I don't believe it will be followed by the Washington Supreme Court, would mean that the terms of the statute that says the attorney-in-fact or agent shall not have the power unless specifically provided otherwise in the document to make gifts, that would have to be read to say the attorney-in-fact or agent shall not have the power unless either specifically provided otherwise in the document or where the holder of the power to do it. Well, it's not or the attorney-in-fact testifies. It's or a jury finds by clear and convincing evidence that the grantor of the attorney-in-fact and the gift expressly authorized. That's correct, Your Honor. But this is the purpose of this statute is to set forth a bright-line test. If you want to use the ---- I don't know. I might have, but I'm not and I can't. And what I have to do to go your way is say that the first panel, which ---- and it looks like they spent a lot of time on it. It's a very thorough and careful memo dispo. And I have to say they were way out in left field on that. They're just no basis for what they did or a super beating decision that came down subsequently, which is not the case. There were three decisions that bear on this issue since the panel came down. The Olavine decision, the Jackson National decision, and then there's the Eichholz decision, which is Western District of Washington involving a bankruptcy case. Eichholz. I don't have that. What is that? I believe I cited it in my brief. It's 39-BR-203. It's a district court decision? Yes, sir. Bankruptcy case? Yes. And that ---- Briefly, facts and holding. That was a situation where the question was did the wife have the power to put the community in bankruptcy, absence of the power of attorney expressly referencing that authority. And they cited to Bryan v. Bryan. It's not about a gift. It's about putting the community in bankruptcy. It's about the scope of authority of a power of attorney. As I see the law, the power of attorney has to set forth what you can do and what you can't do in its terms. This statute, the whole purpose of this statute, you talk about have, you know, if you were on the court ---- Look, let me tell you in practical terms why I'm having a lot of trouble with it and why I sorted out the incinerator case. Okay. Rich families, as a matter of estate planning, like to give a lot of inter vivos gifts. In America it's done to avoid estate taxes, and everywhere in the world it's done to make sure that the parents' money goes where they want and the parents' things go where they want. Inter vivos gifts are just a really efficient technique. If you're dealing with somebody who's going to have to do a lot of paperwork in a distant state, let alone a distant country, an attorney in fact is just real convenient for everybody to avoid running down at Kinko's and doing faxes all the time and stuff. So it just seems like a pretty natural thing to give, it seems like a huge amount of money to me, but a small part of this estate, to what was it, the daughter and the son-in-law, something like that? It was the daughter and son-in-law, yes, Your Honor. And to use the attorney, in fact, to make it easy. It just seems like what parents, aging parents with a lot of money would do. And I guess that the jury must have thought that. And Lennon goes for that. It seems so natural that it seems like, well, yeah, I can see Washington stretching the attorney in fact statute to allow it. Well, Your Honor, absent the statute, who knows? That might have worked. There are statutes in other jurisdictions, Alabama, I think Virginia, just passed statutes allowing people to gift even though the power of attorney doesn't set forth that power, just to serve the function you're talking about. And the law review article I cited to about granting the power to steal was expressing the opinion that where you have a fiduciary, the fact of a fiduciary gifting a principal's property to themselves is not a circumstance that should be necessarily facilitated. And were it not for this statute, we might not be standing here today. Counsel, we've given you as much time for some reason as we give the most complex cases that we have. So perhaps we should hear from the other side, unless there are any further questions. Yeah, I do. I would like to ask a question. Counsel, I've read the Lennon case, too, and it seems to me the Lennon case involves two transactions. You only referred to one. Yes, sir. It involves stock that was taken over by the defendant in that case, and it also involves the gift of funds in a bank account where the money was put in the bank account by the decedent. As I understand the case, the holding in the case is that the dead man statute, and that was a statute at issue in Lennon, that the dead man statute prohibits oral testimony in a case where the person is now deceased involving a transaction like this, where somebody takes the property, except where there has been a waiver of the dead man statute. And as I read the Lennon case, and I'm giving you batting practice pitches, but I want to make sure that you understand, the holding in the case is that oral testimony was admissible because there was a waiver of the dead man statute as to the stock transaction, but there was no waiver of the dead man statute. Therefore, oral testimony was not admissible under the dead man statute. That's correct, Your Honor. And isn't that the holding in the case? And that's the holding not that somebody can specifically authorize a gift of property notwithstanding RCW 1194-050. And at the risk of offending Your Honors, even were you to decide that the law was sufficiently clear that it didn't require referral to the Washington Supreme Court, which I've asked this Court to do if they believe that Lennon changes the law under Bryant, even if you believe that, you can still reverse the decision below based upon the argument that in the circumstance like this where the only testimony the testimony regarding the fact of gift was at best equivocal as put before the jury, that doesn't meet the clear and convincing standard under Vought v. Vought. And so I understand your resistance to overruling your prior panel, which I contend was, in fact, clearly erroneous in their ruling, but you argued that to Judge Lasny. Pardon me, Your Honor? You argued the insufficiency to Judge Lasny. Yes, Your Honor. And he rejected that argument. He rejected it.  Thank you. Is there any further questions? No. Thank you. We'll hear from your adversary. Thank you, and good morning, Your Honors. I'm Robert Banks, and I represent the Karrugas in this case. I don't know if you could tell from reading between the lines, but this really is about a Filipino family feud between a brother and sister that's gone on since their dad died back in 1996 and has been played out in the courts in the United States for five years or so now. Well, it also involves $4.5 million. It does, Your Honor. There's no question there's a lot of money involved. As you know, we were here once before. That usually winds up with family feuds. Yes. Yes, Your Honor, unfortunately. We were here before, and we got specific instructions from a panel of this court as to what the law was. We went back to Judge Lasnik, and we tried the case based upon that law. And there's no dispute that the instructions given to the jury were in compliance with the Ninth Circuit's directive. And there's also no dispute that the burden of proof instruction that the jury was given, which was a heightened, clear, cogent, and convincing evidence standard that my clients had to meet, was given. There's no dispute about that. Does the Lennon case hold that oral testimony can be introduced, notwithstanding the statute governing power of attorney that says you must specifically provide for making a gift? Well, Your Honor, I... Is that what it holds? What Lennon holds, and I agree with what Your Honor said about the case, there was a dispute about the dead man's statute in that case. And the court held that it was waived as to one transaction, but not as to the other. And the dead man's statute involves oral testimony? Yes. Yes. But in this case, Your Honor, the district court ruled that the dead man's statute had been waived. As to the stock? Pardon? As to the stock. No, I'm talking about in our case. Oh, okay. In the Iragiri case. All right. Judge Lasnik held that the dead man's statute had been waived. Now, if he hadn't reached that decision, the result might have been quite different because a lot of the evidence that came in would not have come in. But the Lennon case, Your Honor, let me just... If I can get to that by first giving you just the one-sentence description or one-sentence holding that I think is critical that this court made in the case, which was, quote, if Tomas specifically authorized Anna Maria to make a gift to herself, RCW 1194050 does not render the gift invalid. And that, Your Honor, was a correct interpretation of Lennon because... Of what in Lennon? The holding? Yes, Your Honor, because Lennon's... It is holding, not victim? I believe that it's holding, Your Honor, because the court said that 1194050 does prevent a power of attorney from making gifts unless it's specifically placed in the power of attorney. And this is a quote from that case. Unless he can introduce evidence that Elsie, who was the grantor, specifically instructed him to do so. Let me take you above that quote. I'm reading now from page 1267 of Lennon. The court says, furthermore, an attorney, in fact, has no power to make any gifts of property owned by the principal unless the document specifically provides otherwise. Citing this statute. That's right. Okay. And then you go on with that. It says, therefore, Roger had no authority to write the Christmas checks unless he can introduce evidence that Elsie specifically instructed him to do so. Doesn't that refer to the language of the statute, which says it must be specifically provided in a written document? No, Your Honor, and the reason for that is the court then went on to explain that there was no evidence that Roger could rely on to meet that burden because the dead man statute prevented him from testifying about what his mom told him he could do. That was in reference to the issue before the court as to whether the dead man statute applied to the stock transactions. Well, I guess I would disagree with that, Your Honor, respectfully. I think that what the court was saying was that if he could prove, if he had presented evidence at the trial court that his mother had, in fact, instructed him to write those Christmas checks, then the decision would have been different. But he couldn't. Why then did the court refer to the power of attorney language, that it has to be specific and in writing? The difference, Your Honor, is that the power of attorney statute prevents an attorney, in fact, from doing something that's outside the scope of the power of attorney. And the reason for that— Outside the written language of the power of attorney. Outside the written language. And the reason for that is you want to protect the grantor from the attorney, in fact, from taking acts that are outside what he was provided. And to ensure that no gifts are made, if the gift is to be authorized, it has to be specific. That's right. And the purpose behind that is— In writing. Yes, Your Honor. Yes, in writing. And the purpose behind it is to make sure that the grantor's intent is affected. But both this Court and Lennon have said that if there is a clear and cogent and convincing amount of evidence that the grantor had a different intent, then he can still make the gift. In other words, you can't—you aren't prevented from making a gift merely because you sign a foreign power of attorney from a bank. So we can ignore the power of attorney statute? No, Your Honor. I'm not saying that you should do that at all. And I would agree with Mr. Gewald that the cases are clear that the power of attorney statute does require a strict construction of powers of attorney. But the cases are also—Lennon, this Court, and the other—there are some other cases, Your Honor, that have held that if you can show that a grantor has a different intent, that intent can still be given effect despite the power of attorney. But it's a pretty high threshold. It is a high threshold, especially in a case where it usually comes up is when the grantor is deceased, because then that's when you don't know what his intent was. And the problem in most of the cases is you've got a dead man statute, and it's very difficult to meet that high burden where you don't have the person to testify about what happened. We were asking your brother earlier, could we, this Court, decide that the earlier decision by this Court in the unpublished opinion was clearly erroneous and therefore the law of the circuit would not be binding? Do you agree that we can do that? I agree that you can do that, and there are two very narrow exceptions to the law of the case doctrine. And I think, Your Honor, well, it seems pretty clear to me that neither of those exceptions would apply. And the Court has gone through some of those with Mr. Gewald, but the two exceptions are intervening controlling authority and the clearly erroneous standard. And even, Judge Alarcon, if you read the case of Lennon as you read it, I think that it's still a stretch to say that the prior panel was clearly erroneous. Maybe the case could be read a couple of ways, and maybe if we were up here for the first time it would be a different result. But we're here under the umbrella of the law of the case doctrine, and there are good policy reasons for that. Let me ask you this. What about the argument that they didn't meet? They didn't – that once the trial unfolded here, there really wasn't sufficient evidence to override the definition? Well, thank you for giving me an opportunity to talk about that, Your Honor. The first thing I would say about it is that the burden or the standard of review is a highly deferential one, of course, on the reviewing a decision of a panel – of a jury. And there is some dispute between Mr. Gewald and I about whether you use the Federal or the State standard, and I believe it's the Federal standard. And if I could have a few minutes, I can go through some of the evidence that a reasonable jury might have considered in making its decision. Judge Lasnik, there was a motion to – for judgment notwithstanding the jury verdict? That's right, Your Honor. What did Judge Lasnik say in response to that? Well, he ruled in a single sentence, Your Honor, that the evidence was more than sufficient to meet the – or to uphold the jury's verdict. Maybe without taking a few minutes, just one or so, you could tell us the heart of it. What persuaded the jury, despite the written document, that there was authority? Okay, Your Honor. Well, in just a nutshell, this was a very, very wealthy man. There wasn't any dispute about that. He's got a daughter that lives on the other side of the world. He's sending money to her while he's very, very ill. In some of the transcripts that we cited, he had a tumor in his lung and was – a dying rich man, Your Honor. There is evidence that he – it was undisputed that he specifically instructed the Karugas to take property that they purchased with that money and put it into the names of a – put it into a corporation called TF Corporation. He specifically instructed them to put those shares of that corporation in their names, and it was undisputed that he never told them to change the ownership of the corporation. There was evidence that he had had a few communications with the Karugas about buying this warehouse for $2.5 million. There wasn't even a deal on the warehouse yet. They had just talked about it briefly. There was no offer. There was no title report. There was no nothing. And the next thing that happens is $2.5 million is wired to that account. The Karugas both testified, and they were allowed to because of the waiver of the dead man statute, that they had telephone conversations with Mr. – Was there anything in writing to support the Karugas, or was it just that the jury believed them and it didn't believe the other side's witnesses? Well, of course, I don't know what the jury ultimately thought, Your Honor, but the only writings were the letters back and forth, but there was nothing. There was not a specific letter from Mr. Aguirre or an agreement that said the money is yours. The case would have been a lot easier had there been, but there wasn't. Did a writing, say, put the stock in your name? There was not a writing that did, but Mr. Aguirre's personal assistant, who was the estate's witness, testified that, yes, that's what he told me to do. That's what Mr. Aguirre told me to instruct the Karugas. The other side's witness. The other side's witness. So that wasn't disputed. And then there was the letter from Mrs. Karuga that was admitted that she – four weeks after the last of the money came to Seattle that said, thank you, Daddy, very much for the money. We'll do the best with it, and we appreciate the gift. It wasn't exactly that, but it's Exhibit 20, and it's something to that effect. And I think that evidence in itself would be enough for a reasonable jury to come to that conclusion after deciding if my clients were credible people or not. This language, Len and Roger will bear the heavy burden of trial, proving that the gift occurred by clear, cogent, convincing evidence. Was that about the use of the power of attorney, or was that about a different transaction? Well, Your Honor, I think it was about whether the action that he took was something that his grantor, his mother, had authorized him to do. I'm thinking one thing was about the safe deposit box, and one thing was about the stocks you had to get through. Right. There was a safety deposit box with the stock in it, and then the real dispute was over these relatively small Christmas checks that he wrote to, I think it was, other relatives. Did you say that's the real dispute? Pardon? Maybe I misunderstood. Did you say the real dispute was about the checks? Well, by real, I meant the part of the dispute where they were talking about whether Roger had enough evidence to show that his mother intended him to write those checks. The reason I asked you that is that the first sentence in Lenin is, this is an action brought by the personal representative of the estate, Elsie Lenin, to recover the proceeds from stock certificates sold by Roger Lenin. That was the dispute. That's true, Your Honor, but there was also another dispute about the checks. I want you to help me with some language here in this Court's prior unpublished decision. The Court says, The State of Lenin supports the Kyrgios contention that Section 1195050 merely prevents the agent from making a unilateral gift unauthorized by the principal. However, when there is evidence that the specific gift was authorized by the principal, the policy behind Section 1194050 of protecting the principal does not apply. That's correct. Now, the policy that this Court was talking about was the policy that motivated the legislature to protect deceased people from unauthorized gift is to require it to be expressed in writing. That is the power to make the gift. Can this Court indicate that a statute is not applicable because we decide there is a different policy? No, Your Honor, you can't. What did this Court mean, do you think, when it said the policy behind the section does not apply? I think that it was referring back to the Lenin decision, Your Honor, because what I see the policy in that statute as being is to protect the grantor. Now, the dead man statute? No, 1194050, the power of attorney statute. The policy behind that is to ensure that the grantor isn't taken advantage of and that his intentions, his wishes are met. And what the Lenin case said, and I think what the prior Ninth Circuit Court meant, was that when there is this high level of evidence that the grantor had an intent that wasn't specifically set out in the power of attorney, that that intent will be honored as well. And as I see it, that furthers the real policy behind the power of attorney statute, because both of them go to making sure that the grantor's intent is met. The policy behind the 050 is to protect the estates from having people come in after, after the person dies, and says, well, it was an oral gift. Isn't that the policy? I'm sorry, Your Honor. Are you talking about the dead man statute or the power of attorney? The power of attorney statute. The policy behind that was to protect the estate and protect the money in the estate from having somebody come in and say, well, I orally got a gift. Isn't that why they put the language? It has to be expressed? That's true. They put the language in there to ensure that someone does not take advantage of the grantor. So this Court's reading earlier just wipes out that statute, doesn't it? By saying you can introduce oral testimony. Well, but that's what the Lennon Court said. Well, was that the holding? Well, Your Honor, I guess there could be a dispute. Was the Lennon Court hold you can bring in oral testimony to get around the power of attorney statute? Yes, Your Honor, I think that it was, because the Court went on to discuss. I can't find that in the case. Can you read it? Well, yes, because the Court went on to discuss why Roger wasn't able to meet that burden. The Court said that he didn't introduce any evidence showing an express right to make the gift. That's right. Having just cited the statute, which says it must be in writing. But it went on to say, Your Honor, that the reason he couldn't is because the dead man statute made it admissible any testimony he wanted to give about what his mother told him to do. Well, we're dealing with a power of attorney statute here. Right. But the two of them. That says it has to be expressed. That says that it has to be expressed. In writing. In writing. I agree with that. But I guess I disagree with you on the import of the Lennon decision, Your Honor, respectfully, because I don't see why the Court would then have gone on to discuss, well, why Roger couldn't have met that burden. The reason he couldn't is because of the dead man statute. But if he had had admissible evidence, then the result might have been different in that case, and the checks may have been permitted. But admissible evidence under the power of attorney statute is a document in writing authorizing a gift. Isn't that true? That's true. But maybe the distinction that we're disagreeing on, Your Honor, is that that power of attorney statute prohibits an attorney, in fact, from taking a particular action that's ultra-virus, that's outside the scope of the document. But it doesn't handcuff the grantor from taking actions that he wants to take, even if they are outside the scope of the form. Okay. Are there any further questions? There don't appear to be any. Your time has just about expired. Thank you for your questions, Your Honors, and I appreciate being here. Your Honor, in regards to the evidence that was introduced below, the only people who said it was a gift were Mrs. and Mr. and Mrs. Karuga. Nobody else said it was a gift. No writing said gift. There's nothing from Mr. Aguirre that says gift. And there are 20 or 30 letters from the Karugas reporting to either Mr. Aguirre directly or to his administrative assistant saying we'll need T.A.'s permission to do this. And before the money was sent in regards to the warehouse, they were reported on different options, one of which was purpose, one of which was purchase of this. And then he sent the amount of money they asked for to buy that Roosevelt warehouse. This evidence, this written evidence created by them, was absolutely inconsistent with their testimony in the gift. What about that testimony that your adversary referred to? Mrs. De La Fuente said that the decedent was aware that they had put the shares of T.F. Corporation into their own name. And she also testified that it was Tomas Aguirre's standard practice to use nominates to hold property on his behalf, and her standard practice was to get assignments back from them, but she didn't do it because they were family. This is the classic example. That's a very important statement. I mean, many of us put shares in a nominee's name because it's inconvenient to deal with them. For whatever reason, yes. So our stock is owned by Dean Witter or whoever our broker is. Right. But with family it's different. We wouldn't do that unless we meant for them to own the stock. Or I would put it in my son's name because I know if I turned to my son and I said, hold this investment for me, my son would give me the shares back when I asked him for it, and he wouldn't treat them as his own if they were sent for investment purposes. If you're old and sick and dying, you might not forget and not get around to it. Oh, who knows. But if I told my son, and it's inappropriate to use my name, if one told one son that handle these investments for me, supervise these investments for me on my behalf, I think it's reasonable and human nature to say they would respond accordingly. But here, up until the time of the death, they never told anybody else it was a gift. Mr. and Mrs. Karruga, their own testimony, there was no gift. This is a classic example of the person dies and they came back and say, oh, by the way, family, he gave it to me. Now, is that quick? The jury was instructed that it was defined on the basis of clear and convincing evidence. Yes, Your Honor. And they were very credible witnesses. I don't deny that. But I also say that there isn't a reasonable dispute about the burden of proof. Under the Anderson v. Liberty lobby case, which I cited in my brief, the determination whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that applied in the case. And in that case, it was clear and convincing. In our case, it's clear and convincing. You've got to have a showing of clear and convincing. And under Vought v. Vought. And you argued that to the jury? Pardon me? And you argued that to the jury?  Okay. Thank you, Your Honor. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Alarcon, Kleinfeld